Mr. Himmelfarb. May it please the court, Edward Himmelfarb with the Department of Justice representing DEA agent Keith Billiot. We're here on appeal from the denial of qualified immunity to agent Billiot. On the morning of June 2nd, 2018, law enforcement officers saw Gus Tousis, a suspected drug trafficker, pick up what they believed was a supply of drugs. When they tried to arrest him, Tousis fled in his SUV, sometimes at dangerously high speeds. Eventually, Tousis exited the agent Billiot, who by the way was driving an unmarked vehicle at the time. Agent Billiot eventually pulled his car in front of Tousis' SUV at a red light, with his car's siren on and lights flashing. Agent Billiot got out of his car wearing a DEA vest and carrying a rifle, and he stood directly in front of Tousis' SUV. He was shouting commands at Tousis to turn off his car and get out. At this point, Tousis was caught. There's nothing left for him to do except to turn off his car and get out. Sadly for everyone, though, he didn't do that. Instead, Tousis drove forward in the direction of agent Billiot, who was directly in front of his car, and he was standing there with his rifle and forced agent Billiot to make the difficult decision at that time to use deadly force. So the record's clear, Mr. Himmelfarb. The way the government is approaching it is accepting the plaintiff's facts. Correct. So even if it's not necessarily a forward movement of the car, it's at least a movement to the right of the car? Is that fair? Yes. All right. Yes, because they were so close. It's like being in a parking space on the side of a road, you know, where you have a car in front of you. You can't just turn right and get out. You have to wiggle your way, so you're going forward as well, and agent Billiot was standing really directly in front of the car, and that's been admitted. Right. Since we have that concession that Tousis was turning his wheel to the right, and I guess I think the word was maneuvering in that direction, I take it you would argue that that would suggest imminent flight. Yes, there are actually two aspects of this, of the maneuvering there. One was the direct threat to agent Billiot himself, because he was standing really close in front of the SUV, and so to the extent Tousis had to drive forward, which is admitted by Tousis, that was a threat to agent Billiot personally, his physical, you know, situation there, his life, and threat to his serious physical danger to him, but also the turning right, and the plaintiff says this in her brief, that he was trying to escape, and that's a second aspect of it, because Supreme Court case law says there are two types of threats that would justify the use of deadly force. The first is a threat to the officers themselves, and the second is a threat to the public, to other people in the vicinity, or to the public at large, and some of the Supreme Court's cases are about that second aspect of it, where there are car chases, police chases, and high speeds, and so on, and that's, that's a risk, and some of this court's decisions also talk about the threat to others, so there were really two aspects, there are two different threats here, both apply, but I think the court should focus on the threat to agent Billiot himself personally. So would you, would you cite Plumhoff as the best authority for qualified immunity in this circumstance? I think that Plumhoff is relevant to the threat to others. The threat to agent Billiot personally, I think the best case is this court's decision in Tolliver. In Tolliver, it's a very, very similar fact situation. The police were told that there was a drug transaction, and somebody was leaving in the white Mitsubishi car. They saw the white Mitsubishi, they pulled in front of it, had a red light, stopped it, and they got out, both two officers got out with guns. Actually, in this case, agent Billiot's car was unmarked, but it, but it had sirens and, and lights flashing, and that, in Tolliver, there were no lights, and it was totally undercover, so at first Tolliver thought that these officers may have been criminals, but eventually he figured that from the demeanor of one of them, I think he said, that that was a police officer. The two officers are out there with guns. First thing Tolliver does is he reverses, so his court did the math in that case, and when, when Tolliver's car starts rolling forward, he's 32 feet away from the officers. The court figured out that that, at three miles an hour, that's 4.4 feet per second, and that means it's just over seven seconds before he reaches the officers, and what the court, the court was persuaded that in that situation, the officers had only seconds to decide what they're supposed to do, and they could be concerned that, that the driver of this Mitsubishi would suddenly accelerate and shorten that distance and reduce the amount of time they had to react to it. Now here, Agent Billy is much closer than the officers there. They were 32 feet apart from, from the car. Here they, he was standing directly in front of the SUV. He had almost no time whatsoever to, to react to this, and so I think Tolliver is a, is a good decision in our favor to support the award of qualifying, qualifying immunity here, and the plaintiffs relied solely on the decision in Starks, and district court resigned, relied solely on the decision in Starks, and as we pointed out in their briefing, Starks was working on the assumption, because there was a fact dispute, Starks was working on the assumption that, that Officer Black there ran out from behind the utility pole after Starks had floored the accelerator of the stolen taxi, and put himself in danger by doing that, and that was considered not something he was entitled to qualify immunity for, but the court pointed out, if the defendant's version of the facts were correct, that if Officer Black was already standing in front of the car before it started forward, then they would, he would be entitled to qualifying, as would the other two officers in that case, they would be entitled to qualify immunity, because the driver had directly threatened their, their safety by driving forward, and the other thing that, that's relevant in, in Starks is that, that officers, it says that we agree that officers may use deadly force even after choosing a vehicle, should never have gotten out of this car to arrest Gustus, is, is just wrong, it's not supported by Starks, it's not supported by subsequent case law, which we also cited in our reply brief, so it seems that there's really a fairly clear case here that, that there's no clearly established law, and which is a particular problem for plaintiffs to overcome in the Fourth Amendment excessive force context, because as the Supreme Court has said, the main decisions of Garner and Graham against Connor do not by themselves establish clearly established law, it has to be something that everything is fact-based in the Fourth Amendment context, and so the, you need to show a specific case or case, set of cases that clearly establish the case law in the excessive force context, and that's our position here, Your Honor. Okay. Oh yes, I'm sorry, Your Honor. Thank you. Thank you. Unless you, are you saving everything else? Well, if Your Honor has no questions for me, I will save everything else. Thank you very much. Okay. Thank you very much. Hello, Mr. Caporelli? Yes, good morning, Your Honor, good morning, Your Honors. Good morning. Good morning, Your Honors. My name is Vincenzo Caporelli and I represent the plaintiff Rapelli-Aleatus, a special administrator of the estate of Gus Tussis, deceased. Before I begin my argument, I want to underscore the tragic facts of this matter and point out that Ms. Tussis, daughter of Gus Tussis, is in the courtroom today seeking justice for the unnecessary death of her father. I will begin with a brief overview of the facts and then explore Supreme Court jurisprudence and case law from this and sister circuits, all of which support the denial of summary judgment on claims of qualified immunity in cases of excessive force. On the morning of June 2nd, 2018, Gus Tussis was sitting in his vehicle, stopped in traffic with a red light and two cars ahead of him, likely aware that he was being covertly pursued by law enforcement. When Agent Billiott aggressively cut Mr. Tussis off, placing his driver's side door directly in line with the front of Mr. Tussis' vehicle, exited his vehicle wielding his carbine rifle, ran as fast as he could directly toward a vehicle he admittedly knew could strike him, raised his weapon, pointed it at the driver, fired one shot and killed Mr. Tussis, sending the vehicle careening through traffic, jumping a curb, landing on a sidewalk and striking a pole. Agent Billiott's use of deadly force to seize Mr. Tussis was unreasonable, as Mr. Tussis was suspected at most of speeding or drug dealing, neither of which is a severe or violent crime. Mr. Tussis posed no imminent threat at the time and under the circumstances. Is there a distinction between Mr. Tussis turning the wheel to the right versus the Starks case with the officer jumping out from behind the pole? Your Honor, I would argue that there is no distinction based on the principle. In the case of Starks, the officer moved from behind a pole, a place of relative safety, and stepped into the path of a moving vehicle. Likewise, in this case, Agent Billiott exited his vehicle, a place of relative safety, and stepped into the path of a vehicle he admittedly knew could strike him. Agent Billiott posed a threat to himself and the public when he unreasonably created the encounter which ostensibly permitted the use of deadly force to protect himself. What was objectively unreasonable about expecting a boxed-in suspect to obey commands at gunpoint? How could the police ever affect an arrest if we found they should never place themselves in any danger to do so? Can you help me with that? Yes, Your Honor. I believe that Agent Billiott's use of force was unreasonable at the time he exited his vehicle. He testified that he admittedly knew that if he were to exit his vehicle at the time, he would be placing himself in danger at risk of being struck by the vehicle. He assumed that risk and proceeded with that course of action. The case of Starks does not say that an officer cannot use deadly force if it becomes reasonable. However, the case of Starks does say that an officer who turns a fleeing felon into a danger of life and limb cannot escape immunity. The Supreme Court has clearly established that the use of deadly force to prevent the escape of fleeing felons, rather, excuse me, Your Honors. The Supreme Court has established that the use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is unconstitutionally unreasonable. And a suspect fleeing in a vehicle that has not posed a threat to anyone has a clearly established right not to be seized with deadly force. Now, just help me with this. Are you suggesting that we can never consider the circumstances of the earlier flight, 114 miles an hour in traffic, when we assess the reasonableness of an officer's actions a short time later? I mean, doesn't it seem highly relevant under the totality of the circumstances that the officer knew that Mr. Teuces had engaged in very dangerous driving during the first escape and now he appeared twice to take off again? Your Honor, while the standard of review is the totality of the circumstances as to the reasonableness of the officer's force, the court must carve up this incident into segments and judge the officer's actions at the time the threat was allegedly presented. At this point, Mr. Teuces had abandoned his escape, had abandoned his flight. There was no high speed pursuit. There were no high speeds being driven by Mr. Teuces at this time. Mr. Teuces did not pose a threat to Agent Billiott as Agent Billiott was not struck by Mr. Teuces' vehicle. Mr. Teuces posed no threat to the public because he was sitting in his vehicle, stopped in traffic at a red light. Mr. Teuces did not pose a threat to the other officer, Agent Bankey, who was more than 100 yards behind him. Well, see, it seems to me that your theory is that before the shot was fired, Mr. Teuces was turning his wheel to the right and, and I quote, the word maneuvering his car in that direction. I, how does one maneuver a car without moving it? And isn't it clear that the car was in drive at that moment? I mean, I base that on the fact that the car lurched into the right lane when the shot was fired. So doesn't that strongly suggest imminent flight by someone who just engaged in a, in a very dangerous escape, the 114 miles? While, while Mr. Teuces had driven at high speeds earlier, he was not driving at high speeds at this time. Mr. Teuces was responding to a threat of an individual pointing a gun at him in traffic. Agent Billiott had never, or rather, Mr. Teuces had never maneuvered his vehicle aggressively toward anybody throughout the day. While he was driving at times of 114 miles per hour on the expressway, there is no evidence in the record that shows he put anybody in danger. Distinguishing by the case of Plumhoff on those facts, the driver in Plumhoff had maneuvered past about two dozen other vehicles very dangerously. That is not, that is not the case here. I would argue that Agent, rather Mr. Teuces was not intending to strike Agent Billiott, but rather was moving to maneuver away and escape in response to the threat of deadly force that Agent Billiott created and presented to him. The agent, the backup agent, not Agent Billiott, was 100 yards behind Mr. Teuces, and he testified that. He heard the shot being fired, observed Agent Billiott fall to the ground, and then observed the vehicle accelerate forward. It is, in order for, rather, excuse me. The threat presented by a fleeing felon must be willful in order to warrant the use of deadly force. In this case, I argue that Mr. Teuces was not intending to strike Agent Billiott, but rather was attempting to escape. Also, I would argue that Mr. Teuces, excuse me. It is also possible that Mr. Teuces' actions were not willful, as he was likely dead or incapacitated when the vehicle moved forward. If he was dead or incapacitated when the vehicle moved forward, his actions could not be willful, and therefore not voluntary. The evidence indicates that Mr. Teuces' vehicle turned to the right and entered the right-hand lane of traffic. He was not intending to strike Agent Billiott and did not put Agent Billiott at risk of harm. He did not put the public at risk of harm. At the time, carving up the incident into segments, he posed no imminent danger. Agent Billiott created the encounter because Mr. Teuces posed no imminent danger. I'd like to just quote from Plumhoff the case that you're relying on. We have a high-speed chase there, followed by a temporary stop, and then an attempt to resume the flight. And here's what the court said, and I'm going to quote. Under the circumstances, at the moment, when the shots were fired, all that a reasonable police officer could have concluded was that Rickard was intent on resuming his flight, and that if he was allowed to do so, he would once again pose a deadly threat for others on the road. Why isn't that language enough to create qualified immunity for the officer here, even under the plainest version of the facts? Your Honor, if I may distinguish those facts, at the time that the deceased driver was attempting to escape again, his vehicle was flush against a police officer's vehicle, the wheels were spinning, and the vehicle was rocking back and forth. I would argue that that is a more visible understanding of an intention to move rather than a vehicle stationary, in this case, being faced with deadly force, a driver being faced with deadly force when the vehicle is stationary. The vehicle did not maneuver. The driver did not intend to maneuver his vehicle, I would argue. But you conceded that he was maneuvering below, did you not? Have you not conceded that? Your Honor, there are quite a few disputed facts as to the many actions and events that happened in quite a short amount of time. I do concede that the vehicle moved forward, yes, but I would not say that the vehicle moved forward toward Agent Billiott. I would argue that the vehicle moved away to escape. But then again, disputed facts. Mr. Tutsis may have been deceased at the time, and the vehicle may have been moving due to the weight of his foot, leaning against the accelerator after he was shot and killed, while the vehicle was in drive. It is very unclear. We have a lot of disputed facts here. Mr. Corporelli, did you say the car in question was two cars ahead of him at the light? I'm sorry, Your Honor. When you gave us the facts originally, you mentioned the stop at the light. Did you say there were two cars ahead of the car in question? Yes, Your Honor. So where was the escape? Was there another lane? Yes, Your Honor. The right-hand lane of traffic was free. So your position is that he was trying to get to that lane? Correct, Your Honor. So do we have a fleeing felon here or a potential felon? Your Honor, we do have a fleeing potential felon, yes, but it is not better that all felony suspects die than escape. No, no. I didn't want to draw that conclusion. I just want to frame up the facts for myself, that's all. Now, you mentioned the photographs indicating where the bullet entered. Is it that clear exactly where that entry point is? Based on my review, which I spent quite some time on, and I am not an expert, but I do believe that Mr. Tussis was turning his vehicle to the right based on the bullet hole entering the windshield and the placement of the bullet hole on the steering wheel, as well as the bullet having stricken Mr. Tussis in the neck. Thank you. Of course. Thank you. The Supreme Court has questioned the broad scope of qualified immunity as it does not deter unreasonable police conduct. Qualified immunity is not absolute immunity. This and sister circuits have adopted what's known as a state-created danger exception, cited by the Plaintiff Appellee in the case of Starks, referenced earlier, and which denies qualified immunity. We have a third-party witness statement. Agent Billiott's backup, Agent Bankey, said that he heard the shot being fired, observed Agent Billiott fall to the ground, and then, key, and then observed the vehicle accelerate forward. This third-party witness statement disputes the fact, disputes the testimony by Agent Billiott that he was in fear for his life. He abandoned his argument that he was struck by the vehicle. Mr. Tussis did not fear for his life, or rather, Mr. Tussis did fear for his life. Agent Billiott did not fear for his life, or rather, his fear was unreasonable. Mr. Tussis posed no threat to the officers, no threat to the public. Agent Billiott unreasonably created the encounter, which ostensibly permitted the use of deadly force to protect himself. Please affirm the ruling of the lower court and deny Agent Billiott qualified immunity. Thank you, Your Honors. Thank you. Thank you very much, Mr. Caporelli. Mr. Himmelfarb. Okay. Almost all of what counsel just said we've addressed in our reply brief, and I don't want to go over that again unless the court is interested in it, but I do want to point out a couple of admissions that I think I may have mentioned in the opening, but I think are worth repeating. The admission that at the time of this incident, Agent Billiott was straight in front of Tussis' SUV with nothing between them. That's paragraphs 46 and 47 of the statement of material facts that we have in our appendix to the brief. Paragraph 53, it says, As soon as Tussis' vehicle pulled forward, Billiott fired his weapon. So in other words, the pulling forward that they admit happened before the shot. The shot was the result, basically, of the pulling forward, because remember, if Agent Billiott is standing directly in front of the car, there isn't a heck of a lot of time for him to act before a car that moves forward is endangering him, which also points out that an officer can have a threat to his life, even if he's not actually injured in this case. I mean, Toliver is an example. One of the officers in that case was injured, but the threat occurs at the beginning, before the action. There's a threat as opposed to an actuality. The actuality is what counsel here was talking about, that we assume that he was not hit by the vehicle, but even with that assumption, that's only a failure to show an actuality of an injury as opposed to a threat of an injury. Courts don't require officers to be actually injured or killed before they're considered to have had a threat posed against them. And I guess one last thing is that... No, I guess I'll skip the last thing. If the court has further questions for me, I'm happy to try to answer them. No. What was the last thing? No, no, no, no. All right. I can't tell you, Your Honor. No, no, no. All right. Thank you very much. I appreciate it. We would ask the court to reverse the denial of qualified immunity, send it back for dismissal. Thank you very much, Your Honor. Thank you. Thank you. Case will be taken under advisory. Thank you. Thank you to both of our litigants. All right.